1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ASHISH VARMAN PRASAD, | ) | No. C 08-5620  MMC (PR) |
| Petitioner, | ) | |
| | ) | **ORDER DENYING PETITION FOR** |
| vs. | ) | **WRIT OF HABEAS CORPUS;** |
| | ) | **DENYING CERTIFICATE OF** |
| RICK HILL, Warden, | ) | **APPEALABILITY; DIRECTIONS TO** |
| | ) | **CLERK** |
| Respondent. | ) | |
| _____ | ) | |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Ashish Prasad, who proceeds pro se and challenges the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, and petitioner has filed a traverse.[1]

**I.  PROCEDURAL HISTORY**

In 2006, a San Mateo County jury found petitioner guilty of attempted first degree murder, two counts of corporal injury on a cohabitant, assault with a firearm, and possession of a firearm. (CT 485-97.) The jury also found true various enhancements based on firearm use and found true an allegation that petitioner had previously been convicted of corporal

_____

[1] Petitioner initially named D.K. Sisto, former warden of California State Prison – Solano, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Rick Hill, the current warden of Folsom State Prison, where petitioner is currently incarcerated, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian.

1    injury to a cohabitant.  (Id.)  Additionally, after petitioner waived his right to a jury trial

2    thereon, the trial court found true allegations that petitioner had sustained a prior strike

3    conviction under California's Three Strikes Law and a serious felony conviction, both said

4    allegations based on a 1992 conviction for felonious battery.  (CT 557-58; RT 951-52.)  The

5    trial court sentenced petitioner to a term of twenty-nine years in state prison.  (CT 609, 625.)

6        On May 9, 2008, in a reasoned opinion, the California Court of Appeal affirmed the

7    judgment.  (Pet. Ex. A.)  On August 13, 2008, the California Supreme Court summarily

8    denied the petition for review.  (Pet. Ex. B.)

9        On December 17, 2008, petitioner filed the initial petition in the instant action, which

10   petition contained six claims alleging trial court error.  He then sought and was granted a stay

11   to exhaust in state court a claim alleging ineffective assistance of counsel.  (Dkt. No. 5.)

12       Petitioner next commenced collateral proceedings in state court.  On March 27, 2009,

13   petitioner filed a petition for a writ of habeas corpus in the San Mateo County Superior

14   Court, asserting his claim for ineffective assistance of counsel.  (Pet. Ex. F.)  The court

15   summarily denied the petition on April 29, 2009.  (Id.)[2]

16       Petitioner next filed a petition for a writ of habeas corpus in the California Court of

17   Appeal, which petition was summarily denied on May 21, 2009.  (Pet. Ex. G.)  The

18   California Supreme Court denied review on August 12, 2009.  (Pet. Ex. H.)

19       On September 8, 2009, petitioner filed in the instant action an amended petition

20   ("Pet.") containing all seven claims for relief.  On October 22, 2010, the Court lifted the stay

21   and directed respondent to file an answer to the claims in the amended petition.  Respondent

22   thereafter filed his answer and petitioner then filed his traverse.

23

24

25

26   ────────────

27       [2] According to the California Appellate Courts' on-line Register of Actions, petitioner
     also filed a petition for a writ of habeas corpus in the California Court of Appeal on March 9,
     2009 (No. A124224), which was denied for procedural reasons on March 12, 2009.  (See
28   http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=1&doc_id=1388236&do
     c_no=A124224.)

2

## II.  STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

> The victim, known as Jane Doe at trial, lived with [petitioner] for about eight months during 2005.  Beginning on the evening of October 6, 2005 through the morning of October 7, 2005, [petitioner] severely beat Doe.  Once the attack began, Doe stayed awake for more than 24 hours.  During this time, [petitioner] did not let Doe out of his sight, not even to use the bathroom.  Doe sustained massive bruising on her arms and legs, as well as bruises to her face and chest.  [Petitioner] held a gun to Doe's head and pulled the trigger twice, but the gun did not fire.
>
> After [petitioner] tried to shoot her, Doe experienced trouble breathing, so on the afternoon of October 7, 2005, [petitioner] took her to Kaiser Hospital in South San Francisco, where Doe worked as a nurse.  While at the hospital, Doe met with a coworker, Jane Mangarin, who was a fellow nurse.  Doe first asked Mangarin if she could keep a secret "about a matter of life and death."  Doe then took Mangarin into the bathroom and showed her the bruises that were on her body.  Doe told Mangarin "she was beaten by her boyfriend."  Mangarin told Doe to go to the emergency room and suggested that Doe take photographs of the bruises.
>
> Mangarin took photographs of Doe's bruises.  Doe cried when she met with Mangarin.  While she was at the hospital, Doe did not call the police because [petitioner] was circling outside in his car, and she was "very afraid of what would happen" if she reported the attack.
>
> Stephen Brown and his wife, Annette Brown, were ministers at the church Doe attended.  On the evening of October 7, 2005, Doe and [petitioner] had planned to host a bible study group led by Stephen.  Approximately 7:00 p.m., Stephen called Doe on her cellular phone to cancel the meeting because he was very ill with a severe, migraine headache.  During this conversation, Doe told Stephen that "something had happened," and that she needed a ride.  Doe sounded terrified; Stephen had never heard Doe sound frightened like this before.  He tried, without success, to reach Annette to ask her to pick up Doe.  Despite feeling extremely ill, Stephen decided he would get Doe and bring her back to his house.  Stephen explained, "I didn't feel like I was physically able to go, but I heard in her voice this fear that made me want to go anyway.  So I think it's – it's a testament to how much I felt like she was afraid that I went ahead even though I felt very sick."  Doe subsequently called Stephen and told him that she had arranged a ride to the police department and that she would meet him there.
>
> When Stephen met Doe at the police station, he noticed immediately that she was very afraid.  He told her "if something serious [has] happened and she needed to report it to the police, this would be a good opportunity since she was in a police station."  Doe told Stephen that she did not want to talk to the police at that time.  Stephen suggested that they drive back to his house because he was very ill.  He was so sick that he even vomited at the police station.
>
> Once he arrived home, Stephen went to bed and left Doe to talk with Annette.  Annette noticed that Doe had difficulty breathing and that she was short of

1   breath.  Before Doe would talk to Annette, she insisted on calling her brother
2   Joseph to let him know that he was in danger from [petitioner].  After calling
    Joseph, Doe told Annette about the beating and showed her the bruises on her
3   body.  Doe also told Annette that [petitioner] had held a gun to her head and
    pulled the trigger twice, and that he became very angry when the gun did not
    fire.
4
5   Annette suggested calling the police.  However, Doe did not want to report the
    incident to the police because she was afraid it would prompt [petitioner] to
6   harm her brother Joseph.  After talking about the incident for more than two
    hours, Doe agreed to contact the police.  Doe asked the police for an escort to
7   her house to pick up her belongings.  When the dispatcher hesitated, Annette
    told Doe to tell the dispatcher what had happened.  Doe then shouted,
8   "somebody's trying to murder me."

9   At the police station, Doe was still crying and emotional.  From the police
    station, Doe made four recorded telephone calls to [petitioner] (collectively
10  referred to as the "pretext call").  During the pretext call, [petitioner] repeatedly
    failed to deny Doe's accusations that he had harmed her.  [Petitioner] also
11  berated Doe and made violent statements indicating that he would continue to
    harm her.
12
    On October 8, 2005, police searched [petitioner's] residence and discovered a
13  semiautomatic handgun with two magazines in the bedroom he shared with
    Doe.  The gun was loaded and one of the bullets had a dent on it, indicating
14  that the gun had not fired when the trigger was pulled.

15  On October 13, 2005, John Dunsford, a longtime friend of [petitioner], visited
    [petitioner] and Doe at their residence.  When [petitioner] left the room, Doe
16  showed Dunsford a red mark on her chest.  According to Dunsford, Doe said
    the mark came from a punch.
17
    [Petitioner's] former wife, Joyteshna, also known as Joti, testified that
18  [petitioner] had beaten her in 2003 and had violated a domestic violence
    restraining order in 2005.
19
    Prior to trial, Doe recanted her allegations against [petitioner] in several written
20  statements.  Despite having been granted use immunity and cited for contempt,
    Doe refused to testify at trial.
21
    (Pet. Ex. A at 2-5 (footnotes omitted).)
22
                                **III.  DISCUSSION**
23
    A.    <u>Standard of Review</u>
24
           This Court may entertain a petition for a writ of habeas corpus "in behalf of a person
25
    in custody pursuant to the judgment of a State court only on the ground that he is in custody
26
    in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);
27
    <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975).
28
           A district court may not grant a petition challenging a state conviction or sentence on

                                        4

the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect on the verdict."  Penry v. Johnson, 532 U.S. 782, 796 (2001) (internal quotation and citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Williams, 529 U.S. at 405-06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Id. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

Here, as noted, the California Supreme Court summarily denied petitioner's petitions

for review.  (Pet. Exs. B, H.)  The Court of Appeal, in its opinion on direct review, addressed

five of the seven claims petitioner raises in the instant petition.  (Pet. Ex. A.)  The Court of

Appeal thus was the highest court to have reviewed those claims in a reasoned decision, and,

as to those claims, it is the Court of Appeal's decision that this Court reviews herein.  See

Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-

92 (9th Cir. 2005).  As to the claims for which there is no reasoned opinion available, the

United States Supreme Court has recently clarified that a federal habeas court, in applying

the review provisions of 28 U.S.C. § 2254(d), looks to the result reached by the highest state

court, and the absence of reasoning does not prevent application of the standard of review set

forth in § 2254(d).  See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

B.      Petitioner's Claims

Petitioner asserts the following grounds for relief: (1) erroneous admission of

evidence of statements the victim made to third parties; (2) erroneous admission of the

pretext call; (3) prosecutorial misconduct; (4) erroneous admission of propensity evidence;

(5) insufficient evidence to support two separate acts of corporal injury; (6) cumulative error;

and (7) ineffective assistance of appellate counsel.  The Court addresses each claim in turn,

including any sub-claims contained therein.

1.      Confrontation Clause – Admission of Doe's Statements to Jane Mangarin and
        Annette Brown

As noted, the victim (hereinafter, "Doe") refused to testify at trial, despite having been

offered immunity by the prosecutor and having been cited for contempt by the trial court.

(RT 75, 77, 355-56; CT 399-400.)  Doe's statements describing the attack were admitted into

evidence through the testimony of Annette Brown ("Annette") and Jane Mangarin

("Mangarin").  (RT 260-71, 288-324.)  The trial court also admitted a number of letters

written by Doe and recanting her earlier statements to Annette and Mangarin.  (RT 776-77;

CT 443-75.)  Petitioner claims the admission of Annette's and Mangarin's testimony

regarding Doe's statements violated his Sixth Amendment right of confrontation under

Crawford v. Washington, 541 U.S. 36 (2004).  (Pet. at 18-31.)  The Court of Appeal

6

summarized the background of this claim as follows:

> Before trial, the prosecution filed a written motion to admit the challenged evidence.[3]  The prosecutor claimed: (1) the statements fell within the spontaneous declaration exception to the hearsay rule; and (2) they were outside the scope of *Crawford* because they were nontestimonial.[4]

> At the hearing on the motion, Annette testified that from the outset of her conversation with Doe, Doe was "[v]ery afraid . . . sort of shaking. . . ." Annette had never seen Doe act like this before.  Doe had trouble breathing as she told Annette about the attack.  It was very clear to Annette that Doe was "terrified and terrorized by the events" and that Doe "was dealing with something very immediate that . . . had affected her drastically."  Doe appeared to be reliving the events as she described them to Annette.  As Doe told Annette about [petitioner] firing the gun at her, Doe's eyes were big and she was gasping for breath; Annette said Doe was "just terrified."

> Mangarin testified that there was panic in Doe's voice when she asked Mangarin if she could "keep [a] secret" about a matter of "life and death." Mangarin had never seen Doe act like this before.  When Mangarin asked Doe how she got the bruises, Doe said "that her boyfriend beat her."  Mangarin further testified that there were brochures about domestic violence in the bathroom.  She explained that she told Doe that she should get medical help and get everything "documented."  Mangarin also offered to take photographs of Doe's bruises using her cellular phone, which had a camera.  Doe, however, remembered that she had a camera in her car.  Doe left and returned with her own camera a few minutes later.  Mangarin then used Doe's camera to take the photographs.  During the entire time Doe was with Mangarin, Doe acted scared and afraid.

> In seeking to exclude the statements, defense counsel argued they were testimonial hearsay barred under federal and state law.  The trial court ruled Doe's statements (1) qualified for admission under the spontaneous declaration [exception] to the hearsay rule, and (2) were not barred by *Crawford* because they were not made "either to law enforcement officers or in contemplation of a criminal prosecution or police investigation."

(Pet. Ex. A at 5-6 (footnotes renumbered).)

The Confrontation Clause of the Sixth Amendment provides that, in criminal cases, the accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  "It commands, not that evidence be reliable, but that reliability be assessed in a

---

[3]   The prosecution also sought to admit statements Doe made to Stephen.  However, the trial court determined that there was not any specific hearsay statement made to Stephen and that Stephen's testimony constituted "demeanor evidence."

[4]   The prosecution also claimed the statements were admissible under the doctrine of forfeiture by wrongdoing.  However, the trial court did not rule on this contention, so we need not address this issue.

particular manner: by testing in the crucible of cross-examination." <u>Crawford</u>, 541 U.S. at 61; <u>see also</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 315-16 (1974) (noting "a primary interest" secured by the Confrontation Clause "is the right of cross-examination"). The right to cross-examine under the Confrontation Clause provides the opportunity to "expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." <u>Davis</u>, 415 U.S. at 318.

The Confrontation Clause applies to all "testimonial" statements. <u>Crawford</u>, 541 U.S. at 50-51. "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." <u>Id.</u> at 51 (internal quotation and citation omitted). "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." <u>Id.</u> Out-of-court statements by witnesses that are "testimonial" in nature are barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. <u>Id.</u> at 59.

When the primary purpose of taking an out-of-court statement is to create "an out-of-court substitute for trial testimony," the statement is testimonial hearsay and <u>Crawford</u> applies. <u>Michigan v. Bryant</u>, 131 S. Ct. 1143, 1155 (2011). "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." <u>Id.</u> "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." <u>Id.</u> at 1156. The formality of the encounter, or the lack of it, may inform the court's inquiry as to its "primary purpose." <u>Id.</u> at 1160.

While the Supreme Court in <u>Crawford</u> did not attempt to "spell out a comprehensive definition of 'testimonial,'" the Court noted that "at a minimum" it includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." <u>Crawford</u>, 541 U.S. at 68. In addition, the Ninth Circuit has held police

1   testimony describing or outlining statements from a witness in lieu of the witness' live-
2   testimony likewise is treated as covered by the Confrontation Clause.  Ocampo v. Vail, 649
3   F.3d 1098, 1108-10 (9th Cir. 2011).

4          "Confrontation Clause violations are subject to harmless error analysis."  United
5   States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004); see also United States v. Allen, 425
6   F.3d 1231, 1235 (9th Cir. 2005).  For purposes of federal habeas corpus review, the standard
7   is whether the allegedly inadmissible evidence "'had substantial and injurious effect or
8   influence in determining the jury's verdict.'"  Hernandez v. Small, 282 F.3d 1132, 1144 (9th
9   Cir. 2002) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

10         Here, Doe's statements were not made to government employees or agents.  Nor were
11   they sworn or solemn declarations made during prior testimony at a preliminary hearing,
12   before a grand jury, or at a former trial.  Nor were they made in connection with any
13   government proceeding or investigation.  Rather, they were made to the victim's nursing co-
14   worker and the victim's minister, both of whom also appeared to be Doe's friends and
15   confidants.  Cf. Giles v. California, 554 U.S. 353, 376 (2008) (indicating in dicta that
16   "[s]tatements to friends and neighbors about abuse and intimidation and statements to
17   physicians in the course of receiving treatment" would not be excluded as testimonial by
18   Crawford but instead, "if at all, only by hearsay rules"); Doan v. Carter, 548 F.3d 449, 458
19   (6th Cir. 2008) ("Consistent with Giles, Crawford, and Davis, we find that Culberson's
20   'statements to friends and neighbors about abuse and intimidation' allegedly inflicted by
21   Doan are nontestimonial statements and are not subject to the Confrontation Clause."];
22   United States v. Wright, 536 F.3d 819, 823 (8th Cir. 2008) (citing Giles, inter alia, and
23   holding deceased victim's statement to companion shortly before murder were not
24   testimonial).

25         As "ascertained from the individuals' statements and actions and the circumstances in
26   which the encounter[s] occurred," the Court does not find the "primary purpose" of Doe's
27   statements was to create an out-of-court statement for trial testimony.  See Bryant, 131 S. Ct.
28   at 1156.  Doe's statements, as noted, were made to friends and confidants.  The settings were

1    not formal.  While Mangarin did photograph Doe's injuries, there is no indication Doe's

2    statements to Mangarin were made in preparation for or even in contemplation of future

3    litigation.  To the contrary, as found by the Court of Appeal, Doe's request that Mangarin

4    keep a "secret," was evidence Doe was confiding in a friend, rather than "testifying."  (Pet.

5    Ex. A at 11.)  As also found by the Court of Appeal, the evidence shows Annette asked Doe

6    questions about the incident with petitioner "to understand the basis for Doe's terrified state,

7    not to prepare for trial."  (Id.)  Under such circumstances, the state court's finding that the

8    statements were nontestimonial was neither an unreasonable application of Supreme Court

9    authority or an unreasonable determination of the facts.

10        Because the statements were nontestimonial, their admission did not violate the

11   Confrontation Clause.  Consequently, their admissibility was a question of state evidence

12   law.  The California Court of Appeal determined the statements were admissible under

13   California Evidence Code section 1240 as an exception to the hearsay rule.  (Pet. Ex. A at 6-

14   8.)  The Court will not disturb the California Court of Appeal's interpretation of California

15   evidence law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding federal writ not

16   available for alleged error in the interpretation or application of state law).

17        Accordingly, petitioner is not entitled to habeas relief on this claim.

18        2.    Confrontation Clause – Pretext Call

19        Petitioner claims the admission of the pretext call also violated his Sixth Amendment

20   right of confrontation under Crawford.  (Pet. at 31-41.)  The Court of Appeal summarized the

21   background of this claim as follows:

22        Over [petitioner's] objection, the trial court admitted into evidence and allowed
          the prosecutor to play for the jury the entire pretext call in which Doe asked
23        [petitioner] to explain "[w]hy . . . [he] hit" her.  [Petitioner] contends this
          evidence was inadmissible hearsay and that its introduction violated his
24        confrontation rights under Crawford.  He further complains that the trial court
          erred in failing to redact the pretext call, which he claims was replete with
25        highly inflammatory hearsay accusations. . . .

26        Background

27        At the police station, Doe made a telephone call to [petitioner].  During the
          call, [petitioner] asked Doe where was she calling from, so she told him she
28        was calling from her cousin's house.  When [petitioner] asked why Doe was at
          her cousin's house, Doe responded, "Because you hit me and you tried to shoot

me." Following this response, [petitioner] hung up the phone. When Doe called back, [petitioner] said, "Say that one more time, don't come home." As Doe tried to speak, [petitioner] again hung up the phone. Doe placed another call to [petitioner]. During this conversation, [petitioner] accused her of lying about how long it took to get an "EKG" at the hospital. Doe then said, "Why did you hit me? Why did you hit me? I didn't do anything to you." Again, [petitioner] hung up the phone. Doe called back and told [petitioner], "Promise me that you're not gonna hit me anymore." [Petitioner] responded, "I swear to God."

Later, Doe repeated "promise me you're not gonna hit me." This time [petitioner] said, "Hey, what are you saying, you woman." When Doe said she was telling truth, [petitioner] accused her of telling lies and said, "EKG is five minutes, you took three hours . . . ." Doe then said, "You hit me, blood was coming out. I went to the clinic" and [petitioner] responded, "Three hours." Doe stated, "I didn't do anything, I didn't come and do anything yesterday. You showed [me] the gun and shoved me." Again, [petitioner] did not respond, but accused Doe of taking too long at the hospital and running away from home. Doe replied, "You were hitting, wouldn't I run," whereupon [petitioner] stated, "Are you a fugitive? It's natural shit. Joti number 2 you are." Doe then said, "You hit me so much" and [petitioner] responded "OK." When Doe said, "I took a lot of punches in my face," [petitioner] replied, "Why do you talk in English? Was your dad a white man?" Doe repeated, "you punched me in my face," whereupon [petitioner] stated, "All right I was angry."

[Petitioner] continued to accuse Doe of lying to him and stated, "That is why God showed you this." Doe then stated, "You are the one who hit, what has God to do with it," whereupon [petitioner] replied, "God is the one." When Doe asked [petitioner] to "throw away the gun," stating that she felt "scared," [petitioner] responded, "Better to throw you." Doe then said, "I don't think you [s]hould point [a] gun at me anytime. . . . I thought I was going to die." [Petitioner's] only response was to utter Doe's name.

When [petitioner] asked Doe to "start anew," she replied, "If I stay, promise you will not hit me." [Petitioner] responded, "Nah. If you want, you can just stay there. It's cool with me." Doe then said, "I know you love me but then why do you hit me," and [petitioner] responded with "Hmmm?" Doe again asked [petitioner], "Why did you do this" and he replied, "Huh?" Doe repeated, "Why do you do this? You kept on beating me, I could die," whereupon [petitioner] replied, "You are asking me? You are an expert in running away." Doe then said, "Look. I'm willing to stay with you all life, but you will scare me with a gun. You say will shoot and punch." [Petitioner] responded, "Say I will throw you from the bridge. I did not do anything."

Doe then said, "What kind of a lover are you, you were about to kill me today," whereupon [petitioner] replied, "Yeah, speak." When Doe asked [petitioner] to pick her up from her cousin's house, he replied, "You can play now, but there is a lot of game remaining. In the long run, I will make you play a lot." When Doe asked what [petitioner] meant by "playing," he responded, "Will beat you again. Not today. One month later." Doe stated, "[E]very time you hit me that really, really hurts me and it scares me . . ., but what you did yesterday was just over the limit," whereupon [petitioner] replied, "Chattering in English. Were your father and mother white?" Doe again told defendant, "[W]hat you did yesterday, is over the limit. Showed me a gun. Came back to press the

trigger." [Petitioner] then stated, "Okay? You can talk a lot. . . . Joti is smarter than you. She did not say anything on the phone."

Doe stated, "You kept punching me and I never hit you back once," whereupon [petitioner] replied, "You don't deserve respect. The very bad thing that I did. I tried to forget this." Doe then asked [petitioner] about using liquor, and he responded, "The liquor was to drink and beat you." [Petitioner] then complained that Doe had brought trouble to him and his whole family. Doe replied, "You showed me the gun, you hit me. I say I love you and you show me the gun. What kind of a man are you to do this. I have done nothing wrong to you. Right from the beginning you have been hitting me, hitting me. Now you even show me the gun." [Petitioner] then told Doe, "There is nothing in your heart." [Petitioner] continued to berate Doe, telling her to "[s]hut the fuck up," and stating "[s]till got your bootie stuck . . . put a flashlight up your ass the way you talk." [Petitioner] further stated, "I feel like taking a knife and killing you. Then you will understand what it is."

Doe continued to talk about the beating, stating, "Yesterday you punched me, what if [my jaw] broke" and informing [petitioner] that she was still in pain and unable to eat, whereupon [petitioner] replied, "OK that's fine." Doe further stated that she still was having difficulty breathing and that she thought it was due to the gun, to which [petitioner] responded, "Forget the gun put it in the pussy, talking too much." When Doe asked [petitioner] to look at the round marks left by the gun, he said, "So? So? I cried, I asked for forgiveness. I tried." Doe told [petitioner] that he was unable to kill her because Jesus had saved her, and she further stated that she had "never been beaten so badly like this in [her] life." [Petitioner] replied, "What happened?" Doe repeated, "The way you hit me, no [one hit me] like this in my life," and she added "Did you do that to your ex-wife too," whereupon [petitioner] hung up the phone.

Over defense objection, the court found the conversation qualified as a party admission, which did not implicate *Crawford* as the relevant statements were those attributed to [petitioner]. The court further found that redaction was not necessary, as there was no reference to anything inflammatory or prejudicial other than the alleged events, which were relevant to the context of the statements.

(Pet. Ex. A at 14-17.)

The Court of Appeal found petitioner's own statements in the pretext call "admissible against him as an admission by a party under [California] Evidence Code section 1220."[5] (Pet. Ex. A at 17-18.) The Court of Appeal further found "Doe's accusatory statements were separately admissible against [petitioner] as adoptive admissions [under] Evidence Code

---

[5] California Evidence Code section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ."

12

1    section 1221."[6]  (Id. at 18.)  Specifically, the Court of Appeal found:

2              Here, in the face of Doe's numerous statements that [petitioner] had tried to kill
             her, and that he hit, punched, and beat her, [petitioner] responded with silence,
3            equivocation, and threats of violence. . . .  The theory underlying the adoptive
             admission exception is that "the natural reaction of an innocent man to an
4            untrue accusation is to enter a prompt denial" (People v. Simmons (1946) 28
             Cal.2d 699, 712), and if the accused fails to act as an innocent person would be
5            expected to in the face of an accusation, an inference of consciousness of guilt
             may properly be drawn therefrom (People v. Green (1952) 111 Cal.App.2d
6            794, 798). . . .  By failing to deny Doe's accusations, [petitioner] impliedly
             admitted the truth of her statements and adopted those statements as his own.
7
8    (Pet. Ex. A at 18-19.)  The Court of Appeal further held the introduction of adoptive

9    admissions does not violate Crawford because the declarant's accusatory statements are not

10   offered for the truth of the matters asserted but rather "to supply meaning to the defendant's

11   conduct or silence in the face of" those statements.  (Id. at 20 (citing People v. Combs, 34

12   Cal. 4th 821, 842-42 (2004).)  Consequently, the Court of Appeal concluded, the introduction

13   of the adoptive admissions did not violate the Confrontation Clause.  (Id.)

14          The Court of Appeal's determination of this issue was not an unreasonable application

15   of Supreme Court law.  The Supreme Court has held the Confrontation Clause "does not bar

16   the use of testimonial statements for purposes other than establishing the truth of the matter

17   asserted."  See Crawford, 541 U.S. at 59, n.9 (citing Tennessee v. Street, 471 U.S. 409, 414

18   (1985)).  As explained by the Court of Appeal, Doe's statements to petitioner were not

19   admitted for their truth.  (Pet. Ex. A at 19-20.)  The jury was expressly instructed that Doe's

20   statements during the call were admitted for the limited purpose of giving context to

21   petitioner's statements.  (RT 527-28.)

22          Petitioner next claims the admission of the statements he made in the pretext call

23   violated the Confrontation Clause.  (Pet. at 35-36.)  While the Court of Appeal found

24   petitioner's own statements were admissible as party admissions under California Evidence

25   Code section 1220, it did not address whether such statements nonetheless were barred under

26

27          [6] California Evidence Code section 1221 provides: "Evidence of a statement offered
     against a party is not made inadmissible by the hearsay rule if the statement is one of which
28   the party, with knowledge of the content thereof, has by words or other conduct manifested
     his adoption or belief in its truth."

13

1   Crawford,[7] nor does respondent address such claim.

2       Petitioner, however, has pointed to no authority, nor is the Court aware of any,

3   holding a defendant's own statements, as recorded by police, whether with or without his

4   knowledge, are "testimonial" for purposes of the Confrontation Clause.  Rather, to the extent

5   a defendant can be deemed a witness against himself, he is protected under the Fourth and

6   Fifth Amendments, not the Sixth.

7       Finally, petitioner's contentions that: (1) Doe's statements were not adoptive

8   admissions under California Evidence Code section 1221, and (2) the trial court erred by

9   failing to redact the pretext call, under California Evidence Code section 352, present only

10  claims of state law error, not federal constitutional error.  The Court will not disturb the

11  California Court of Appeal's interpretation of California evidence law.  See Estelle, 502 U.S.

12  at 67-68 (holding federal writ not available for alleged error in the interpretation or

13  application of state law).

14      Accordingly, petitioner is not entitled to habeas relief on this claim.

15      3.   Prosecutorial Misconduct

16      Petitioner claims the prosecutor committed misconduct by violating the trial court's in

17  limine ruling concerning the scope of testimony to be given by Annette Brown ("Annette").

18  (Pet. at 41-46.)  Specifically, petitioner refers to Annette's testimony that Doe had told

19  Annette petitioner had threatened to kill Doe's brother and his children.  (Id.)  Petitioner's

20  claim misrepresents the trial court's ruling.

21      a.   Background

22      A review of the record shows that, prior to trial, the prosecution filed a motion seeking

23  to admit evidence of statements Doe made to third parties, specifically Annette, Stephen

24  Brown ("Stephen"), and Jane Mangarin ("Mangarin").  (CT 329; RT 146.)  The trial court

25

26      [7] The Court of Appeal treated Doe's statements in the pretext call as a adoptive

27  admissions and dealt separately with petitioner's statements as party admissions.  (See Pet.
    Ex. A at 17-18 ("[Petitioner's] own statements were admissible against him as an admission

28  by a party under Evidence Code section 1220. . . .  Moreover, Doe's accusatory statements
    were separately admissible against [petitioner] as adoptive admissions."))

then held a hearing under California Evidence Code section 402, at which Annette testified

that Doe had arrived at the Browns' home extremely terrified and told her that petitioner had

made lethal threats against Doe's brother, Joseph:

> Q [Prosecutor]: And when [Stephen] brought Ms. Doe back to your house, what was the first thing you noticed about her demeanor?
>
> A: Very afraid.  You know, sort of shaking and so forth.
>
> Q: Okay.  Had you ever seen her like that before?
>
> A: No.
>
> Q: Did you become concerned?
>
> A: Yes, I asked her to -- did she want to talk about it.
>
> Q: And what happened next?
>
> A: The first thing she wanted to do before she talked about what had happened was to ask me to call her brother Joseph because she was afraid for his life. Threats that had been made.  So I called.
>
> Q: And --
>
> A: And passed on the information, uh-huh.  And then she proceeded to talk about herself.  She was afraid for her family first.

(RT 164.)

The trial court also heard testimony from Stephen and Mangarin.  (RT 173-88.)

Subsequent to the hearing, the trial court ruled on which of Doe's statements to third parties

were admissible.  (RT 194-205.)  Such ruling allowed testimony regarding petitioner's

threats to Doe's family.  (Id.)  Specifically, the trial court ruled all of the statements disclosed

in the hearing were admissible, with the exception of Doe's statement to Stephen that

petitioner "was dangerous and her family had been right in their assessment of him."  (RT

175.)  Specifically, the trial court ruled:

> The court is satisfied by the foundation presented that the testimony of Annette Brown and Jane Mangarin does qualify with regard to Jane Doe's statement to them on October 7th with the proviso that I think there was one statement that Annette Brown attributed to Jane Doe about the family members being right or something like that. . . . About defendant being dangerous or something like that.  That I don't think qualifies.  And I think under [California] Evidence Code section 352 such statement will be excluded.  ¶ But the rest I think does qualify.

1    (RT 202-03 (emphasis added).)

2         The trial court elaborated:

3         And here the court has considered all the surrounding circumstances.  The
     court is satisfied from the testimony of Annette Brown and Jane Mangarin that
4         Jane Doe made the statements on October 7th to them spontaneously and while
     she was under the stress of excitement caused by the events that occurred early
5         that morning.  And the statements purported to narrate, describe, or explain the
     act, condition, or event perceived by the declarant with the exception of the one
6         statement that the court has already noted will be excluded.

7         So the court is satisfied that the foundational facts have been met.  The time
     frame is significant, but as the <u>Ramirez</u> court stated it really goes to the issue of
8         mental state.  And the court is satisfied by these witnesses that the requirement
     of spontaneity and that the statements were made under the stress of excitement
9         caused by the perception has been shown.

10        So the court will allow the testimony of Annette Brown and Jane Mangarin
     regarding Jane Doe's statements under Evidence Code section 1240.
11
(RT 204-05.)[8]
12
          At trial, Annette testified as follows:
13
          Q [Prosecutor]: And when [Doe and Stephen] came back to the house, did your
14        husband go into the bedroom?

15        A: He went immediately.

16        Q: And so then you contacted Jane Doe?

17        A: Yes.

18        Q: Can you please tell us what happened?

19        A: Well, the first thing that happened was her great concern for her older
20        brother.  Do I name him or no?

21        Q: You can, yes.

22        A: Pardon me?

23        Q: Yes, I think you can use his first name.

24        A: Her older brother Joseph.  She was just very, very agitated and asked if I
     would call her brother because [petitioner] had said that he would kill Joseph
25        and the children.  And she was --

26        [Defense]: Objection, Your Honor.

27    _____

28        [8] As noted above, the trial court determined there was no hearsay statement made to
     Stephen and that Stephen's testimony constituted "demeanor evidence."  (<u>See</u> RT 197-98.)

16

1    A: And she was terrified that.

2    The Court: Stop.

3  (RT 292.)

4    The defense thereafter moved for a mistrial, arguing the testimony about the threats to

5  Joseph and his children were outside the scope of the in limine ruling.  (RT 294-95, 302.)

6  The trial court initially expressed concern that the testimony exceeded the scope of the

7  court's earlier ruling on the admissibility of statements that Annette could attribute to Doe.

8  (RT 295, 297.)  The trial court held another hearing, outside the presence of the jury, in

9  which Annette testified that petitioner had made the threats during his attack on Doe.  (RT

10  304-05, 307-08.)  Annette also testified that petitioner's attack and threats were the source of

11  fear that had initially prevented Doe from reporting the attack to the police.  (RT 305-08.)

12    The trial court ultimately denied petitioner's motion for mistrial.  (RT 314.)  The court

13  indicated that its initial concern – that the prosecutor had elicited testimony outside the scope

14  of the in limine ruling – was based on a misapprehension that the threats had arisen at some

15  other time or that Annette had learned about them from some other source.  (RT 313.)

16  Noting that the additional hearing had clarified the matter, the court ruled that, as with Doe's

17  other statement about the attack, the threats to Joseph and his family were spontaneous

18  statements admissible under California Evidence Code section 1240, consistent with the

19  earlier ruling:

20    The court was unclear from the testimony that we started in front of the jury
    whether what [Annette] was describing really was correlated to what happened
21    on the 7th or whether it was from some other source. . . .  After clarification,
    I'm satisfied that all of those topics that she had -- and statements she's eluded
22    [sic] to properly fall within paragraph (a) of 1240. . . .  So I think that's within
    the original 1240 ruling.
23
24  (RT 313-14.)

25    b.    Analysis

26  The Court of Appeal rejected petitioner's claim as follows:

27    [Petitioner] contends the admission of Annette's testimony that [petitioner] told
    Doe he would kill her brother and his children constituted grounds for a
    mistrial because this testimony was inadmissible, testimonial hearsay.  He
28    further claims the prosecutor committed misconduct by eliciting this testimony

1   in violation of in limine ruling.  These contentions are without merit.

2       First, as discussed [], the admission of Annette's testimony violated neither the
    hearsay rule nor [petitioner's] confrontation rights.  Second, there is no
3   indication of prosecutorial misconduct.  It is true that the trial court was
    initially concerned that this testimony exceeded the scope of its in limine
4   ruling.  However, once the court clarified that these statements were made as
    part of Doe's spontaneous declaration, it was satisfied that Annette's testimony
5   fell within its original Evidence Code section 1240 ruling.  We agree and
    conclude the trial court did not err in denying [petitioner's] motion for mistrial.

6
7   (Pet. Ex. A at 13-14.)

8       Prosecutorial misconduct is cognizable in federal habeas corpus.  "[T]he appropriate

9   standard of review for such a claim on writ of habeas corpus is the narrow one of due

10  process, and not the broad exercise of supervisory power."  Darden v. Wainwright, 477 U.S.

11  168, 181 (1986) (internal quotation and citation omitted).  A defendant's due process rights

12  are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  Id.;

13  Smith v. Phillips, 455 U.S. 209, 219 (1982) (noting, "the touchstone of due process analysis

14  in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of

15  the prosecutor").  Under Darden, the first issue is whether the prosecutor's remarks were

16  improper; if so, the next question is whether such conduct infected the trial with unfairness.

17  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is

18  decided "on the merits, examining the entire proceedings to determine whether the

19  prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction

20  a denial of due process."  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (internal

21  quotation and citation omitted).

22      As discussed above, petitioner's claim of prosecutorial misconduct rests on an

23  incorrect premise, namely, that the prosecutor elicited testimony outside the trial court's in

24  limine ruling.  Both the trial court and the Court of Appeal expressly found the statement

25  elicited by the prosecutor fell within said ruling.  Nothing in the record supports petitioner's

26  assertion that the trial court excluded Annette's testimony regarding petitioner's threats to

27  Doe's family.  Consequently, the prosecutor cannot have committed misconduct by eliciting

28  such testimony.

1   Petitioner also claims the admission of the challenged testimony violated the
2   Confrontation Clause.  (Pet. at 43.)  As discussed above, the testimony did not violate
3   petitioner's right to confront witnesses, as Doe's statements to Annette were not
4   "testimonial."

5   Accordingly, petitioner is not entitled to habeas relief on this claim.

6          4.      Propensity Evidence

7   Petitioner claims the trial court improperly admitted evidence of prior domestic abuse.
8   (Pet. at 46-58.)   As noted above, the trial court, under California Evidence Code section
9   1109 admitted evidence petitioner had beaten his former wife in 2003 and had violated a
10  domestic violence restraining order in 2005.  Petitioner can prevail on this claim only if the
11  state court's decision to allow the propensity evidence under section 1109 was "contrary to,
12  or involved an unreasonable application of, clearly established Federal law, as determined by
13  the Supreme Court of the United States."  28 U.S.C. § 2254(d).

14  The Supreme Court has left open the question whether a state law allowing admission
15  of propensity evidence violates due process.  See Estelle, 502 U.S. at 75 n.5 ("[W]e express
16  no opinion on whether a state law would violate the Due Process Clause if it permitted the
17  use of 'prior crimes' evidence to show propensity to commit a charged crime.").  Based on
18  the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has
19  held a due process right barring the admission of propensity evidence has not been "clearly
20  established" within the meaning of section 2254(d).  Alberni v. McDaniel, 458 F.3d 860,
21  866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008)
22  (reaffirming Alberni).

23  Accordingly, petitioner is not entitled to habeas relief on this claim.

24          5.      Single Course of Conduct/Sentencing Error

25  Petitioner was convicted of two counts of corporal injury on a cohabitant (Cal. Penal
26  Code § 273.5), both arising from the October 2005 assault.  He received separate concurrent
27  sentences on each count.  Petitioner claims the separate convictions were error because the
28  offenses were part of a "single continuous course of conduct."  (Pet. at 58-60.)  Alternatively,

19

1   petitioner claims multiple punishment on said convictions was barred by California Penal

2   Code section 654.  (Id. at 60-61.)

3        The Court of Appeal rejected this claim as follows:

4   "[California Penal Code] [s]ection 954 generally permits multiple convictions:
    'An accusatory pleading may charge . . . different statements of the same
5   offense' and 'the defendant may be convicted of any number of the offenses
    charged.'  The issue must be distinguished from the closely related question of
6   whether a defendant may receive multiple punishment based upon a single act
    or course of conduct.  [Citations.]"  (People v. Johnson (2007) 150 Cal.App.4th
7   1467, 1474 (Johnson).)  "Section 654 'protects against multiple punishment,
    not multiple conviction.  [Citation.]' [Citation.]"  (People v. Palacios (2007) 41
8   Cal.4th 720, 727.)  "The Supreme Court has recognized the tension between
    section 954 and section 654.  The solution adopted, in general, is 'to permit
9   multiple convictions on counts that arise from a single act or course of conduct
    – but to avoid multiple punishment, by staying execution of sentence on all but
10  one of those convictions.'  [Citation.]"  (Johnson, supra, 150 Cal.App.4th at p.
    1474, italics added.)  " ' "The divisibility of a course of conduct depends upon
11  the intent and objective of the defendant.  [I]f the evidence discloses that a
    defendant entertained multiple criminal objectives which were independent of
12  and not merely incidental to each other, the trial court may impose punishment
    for independent violations committed in pursuit of each objective even though
13  the violations shared common acts or were parts of an otherwise indivisible
    course of conduct."  [Citations.]' [Citation.]" (People v. Nubla (1999) 74
14  Cal.App.4th 719, 730 (Nubla).)

15  Applying these principles, we conclude that [petitioner] was properly convicted
    of and punished for multiple acts of corporal injury upon a cohabitant. . . .
16
    Here, as in Johnson, [petitioner] indisputably committed successive acts of
17  violence against Doe.  (Johnson, supra, 150 Cal.App.4th at p. 1477.)  We know
    that [petitioner] beat her about the face and head, beat her on her arms and
18  legs, and pressed the gun against her chest.[9]  As a result, Doe suffered bruises
    to her legs, arms, and chest; Doe's face was also red and swollen.  From this
19  evidence, the jury could have concluded that [petitioner] completed one
    violation of section 273.5 when he beat Doe about her face and head and on her
20  arms and legs, causing multiple bruising and swelling on her body, and another
    when he pressed the gun against her chest, leaving a red mark.  Accordingly,
21  the evidence is sufficient to support the two convictions of section 273.5.

22                                      . . .

23  Here, too, in keeping with the purpose of section 654 to ensure that punishment
    is commensurate with a defendant's criminal culpability, the trial court was
24  entitled to conclude that each crime was separate, was not committed as a
    means of committing and facilitating any other and was not incidental to any
25  other.  As the prosecutor pointed out during closing arguments, count 4
    occurred when [petitioner] pushed the gun against Doe's body, causing
26  bruising on her chest.  Count 6 occurred as [petitioner] beat Doe, which caused

27

28       [9] As set forth above, the Court of Appeal, in its recitation of the factual background,
    stated the gun was held to Doe's head.

                                        20

all the other bruises on her body.  Although  [petitioner] had the same intent of inflicting injury in both counts, he embarked upon a different course of conduct when he personally used the gun to inflict injury to Doe's chest.  Substantial evidence supports the trial court's implied finding that  [petitioner] entertained separate criminal objectives when he pressed the gun against Doe's chest (count 4) and then beat her about her face and head, and on her arms and legs (count 6).

(Pet. Ex. A at 27-30.)

Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Here, petitioner does not refer to any federal law or constitutional provision in his petition with respect to his multiple convictions and sentencing claim.  Rather, he alleges error under state law only. Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  See Estelle, 502 U.S. at 67-68; see also Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (holding federal courts are "bound by a state court's construction of its own penal statutes").

Accordingly, petitioner is not entitled to habeas relief on this claim.

6.    Cumulative Error

Petitioner claims he was prejudiced by the cumulative effect of the foregoing asserted trial errors.  (Pet. at 61.)  For the reasons discussed above, the Court has found no constitutional error exists, let alone multiple errors.  As there have been no errors to accumulate, there can be no due process violation based on a theory of "cumulative" error. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (holding where there are no errors, there can be no cumulative error).

Accordingly, petitioner is not entitled to habeas relief on this claim.

7.    Ineffective Assistance of Appellate Counsel

Petitioner claims his appellate counsel provided ineffective assistance.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but "effective" assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In order to

21

prevail on a Sixth Amendment claim based on ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, the petitioner must establish prejudice resulting from his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the Strickland test "if the petitioner cannot even establish incompetence under the first prong."  Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).  Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Strickland, 466 U.S. at 697.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant effective assistance of counsel on his first appeal.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland.  See Strickland, 466 U.S. at 668; Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A petitioner thus must show his counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  Miller, 882 F.2d at 1434 & n.9.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a criminal defendant.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  "[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  Miller, 882 F.2d at 1434.  Consequently, where appellate counsel "decline[s] to raise a weak issue," he or she will "frequently remain above an objective standard of competence" and, for the same reason, will have caused his client no prejudice.

A "doubly" deferential judicial review applies in analyzing ineffective assistance of

counsel claims under 28 U.S.C. § 2254.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11

(2011).  The rule of Strickland, i.e., that a defense counsel's effectiveness is reviewed with

great deference, coupled with AEDPA's deferential standard, results in double deference.  See

Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010).  Put another way, when § 2254(d)

applies, "the question is not whether counsel's actions were reasonable[;] [t]he question is

whether there is any reasonable argument that counsel satisfied Strickland's deferential

standard."  Harrington v. Richter, 131 S. Ct. 770, 788 (2011).  Moreover, because

Strickland's standard for assessing defense counsel's effectiveness is a "general" one, state

courts have "greater leeway in reasonably applying [that] rule," which in turn "translates to a

narrower range of decisions that are objectively unreasonable under AEDPA."  See Cheney,

614 F.3d at 995 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

   Here, appellate counsel raised six issues on direct appeal, all of which have been

discussed above.  (See Resp. Ex. D.)  Petitioner claims appellate counsel should have raised

several additional issues, which the Court next addresses in turn.

   a.   Failure to Raise Claims of Ineffective Assistance of Trial Counsel

   Petitioner claims appellate counsel was ineffective in failing to argue petitioner's trial

counsel was ineffective.  Petitioner claims his trial counsel provided ineffective assistance

by: (1) advising petitioner to waive a jury trial on the prior conviction allegations; (2) failing

to request jury instructions on the lesser-included offenses of attempted voluntary

manslaughter and involuntary manslaughter; (3) failing to properly cross-examine

prosecution witnesses; (4) failing to investigate and call certain witnesses; (5) failing to

present expert testimony; (5) failing to present an effective closing argument; (6) failing to

move to suppress impeaching prior convictions; and (7) failing to inform petitioner of a plea

offer.

   i.   Waiver of Jury Trial on Prior Conviction Allegation

   Petitioner claims appellate counsel should have claimed trial counsel was ineffective

for "allowing" petitioner to waive a jury trial on the prior conviction allegation.  (Pet. at 66.)

Petitioner argues he would have had "a much better chance" of acquittal on the strike prior

1  had it been tried to a jury because, according to petitioner, there was little evidence

2  supporting it.  (Pet. at 66-67.)

3      Petitioner was alleged to have been convicted in 1992 of battery with the infliction of

4  serious bodily injury, in violation of California Penal Code section 273(d).  (Resp. Ex. B at

5  7.)  The conviction was alleged as a prior felony under California Penal code sections 667(a)

6  and 1170.12.  (Id.)[10]  On November 6, 2006, after the jury returned its verdicts, petitioner

7  waived a jury trial on the prior conviction allegations.  (RT 895-96.)  Petitioner

8  acknowledged he understood he had a right to a jury trial on those allegations, had discussed

9  that right with his counsel, and wished to waive the right.  (Id.)  The trial court found a

10  knowing and intelligent waiver.  (Id.)

11      Petitioner fails to satisfy either prong of the Strickland test.  First, petitioner cannot

12  establish ineffectiveness.  In support of his claim, petitioner argues that: (1) none of the

13  witnesses could identify petitioner as the assailant, and (2) there were no medical records

14  showing the victim had suffered great bodily injury.  (Pet. at 66.)  A review of the record,

15  however, shows the prosecutor introduced a certified copy of the prior conviction, showing

16  petitioner was the person who had suffered the prior conviction.  (RT 942.)  The prosecutor

17  also called the following witnesses: the victim, a witness to the battery, the arresting officer,

18  and an investigator.  (RT 911, 920, 925, 942.)  The victim testified that his assailant, without

19  provocation, hit him in the jaw, breaking it in multiple locations.  (RT 914-15.)  The victim

20  had his jaw wired shut for ten weeks.  (RT 915, 919.)  The arresting officer identified

21  petitioner as the individual arrested for the battery, and the investigator testified that

22  petitioner gave a statement, prior to that arrest, acknowledging his participation in the

23  battery.  (RT 934, 941-42.)  Petitioner offered no evidence and did not seriously challenge his

24  identity as the individual convicted of said prior offense.  (See RT 916-19, 924-25, 935-37,

25

26      [10] Penal Code sections 667 and 1170.12 provide sentencing enhancements where a

27  defendant has suffered a prior conviction for a "serious felony."  See Cal. Penal Code §§
667(a), 1170.12(b).  "Serious felony" is defined as "any felony in which the defendant

28  personally inflicts great bodily injury on any person, other than an accomplice."  See Cal.
Penal Code § 1192.7(c)(8).

1    941-43, 946, 951.)  In sum, there was substantially more than sufficient evidence for either

2    the trial court or a jury to find beyond a reasonable doubt that petitioner was the individual

3    convicted in 1992 and that petitioner had inflicted "great bodily injury."  See United States v.

4    Okafor, 285 F.3d 842, 847-48 (9th Cir. 2002) ("Evidence of the prior conviction is sufficient

5    if, viewing the evidence in the light most favorable to the prosecution, any rational trier of

6    fact could have found the fact of the prior conviction beyond a reasonable doubt.")  Under

7    such circumstances, petitioner's counsel could have made a reasonable tactical decision that

8    there would be no difference in the verdict irrespective of whether the allegation was tried to

9    the court or a jury, and that petitioner might gain some leniency in sentencing by waiving his

10   right to a jury trial.

11          Further, petitioner has not shown he suffered any prejudice by reason of such waiver.

12   In particular, he fails to explain why the jury likely would have reached a different result.

13          In sum, petitioner has not demonstrated his trial counsel was ineffective in advising

14   petitioner to waive a jury trial on the prior conviction allegations or that appellate counsel

15   was ineffective in failing to so argue.

16          Accordingly, petitioner is not entitled to habeas relief on this claim.

17                          ii.     Failure to Request Lesser-Included Offense Instruction

18          Petitioner claims appellate counsel should have claimed trial counsel was ineffective

19   in failing to request jury instructions on attempted voluntary and involuntary manslaughter as

20   lesser-included offenses of attempted first degree murder.  (Pet. at 68.)  Counsel's reasons for

21   not requesting lesser offense instructions as to said charge were set forth at the time of trial.

22   Specifically, the defense's position was that "the allegation of use of the firearm by

23   [petitioner] [was] entirely a fabrication, that it never happened, that there was no such assault

24   or attempted murder, and accordingly no lesser instruction on any lesser offense [was]

25   appropriate."  (RT 765-66.)

26          It cannot be said that counsel's decision did not "reflect[] the skill and judgment one

27   would expect of a reasonably competent attorney."  Denham v. Deeds, 954 F.2d 1501, 1505

28   (9th Cir. 1992).  Specifically, because either an attempted voluntary or involuntary

1    manslaughter instruction would have been inconsistent with the defense theory of factual

2    innocence, it cannot be said that defense counsel had no rational tactical purpose for deciding

3    not to request such an instruction. Additionally, defense counsel could have made the tactical

4    choice to take an "all or nothing" approach on the greater offense of attempted murder, rather

5    than give the jury the opportunity to convict on the lesser-included offense of attempted

6    voluntary or involuntary manslaughter.

7         Second, petitioner cannot show prejudice because there was no substantial evidence

8    on which to base an instruction of attempted voluntary or involuntary manslaughter.  See

9    Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding instruction on lesser-included offense

10   required only "when the evidence warrants such an instruction").  Under California law,

11   voluntary manslaughter:

12        is defined as the unlawful killing of a human being without malice aforethought
          upon a sudden quarrel or heat of passion.  The heat of passion requirement for
13        manslaughter has both an objective and a subjective component.  The
          defendant must, subjectively and actually, kill under the heat of passion.  But
14        the circumstances giving rise to the heat of passion are viewed objectively. . . .
          [T]his heat of passion must be such a passion as would naturally be aroused in
15        the mind of an ordinarily reasonable person under the given facts and
          circumstances, because no defendant may set up his own standard of conduct
16        and justify or excuse himself because in fact his passions were aroused, unless
          further the jury believe that the facts and circumstances were sufficient to
17        arouse the passions of the ordinarily reasonable man. . . .  To satisfy the
          objective or reasonable person element . . . of voluntary manslaughter, the
18        accused's heat of passion must be due to sufficient provocation.

19   People v. Cole, 33 Cal. 4th 1158, 1215-16 (2004) (internal quotations and citations omitted).

20        "Involuntary manslaughter," under California law, "is the killing without malice, in

21   the commission of an unlawful act not amounting to a felony."  See Solis v. Garcia, 219 F.3d

22   922, 929-30 (9th Cir. 2000).

23        Here, there was no evidence petitioner was provoked.  Further, the evidence showed

24   the beating did not occur "upon a sudden quarrel or heat of passion."  Rather, it continued

25   over the course of two days, during which time petitioner twice attempted to shoot Doe in the

26   head at close range.  (See RT 316.)  In light of the lack of evidence to support a theory of

27   manslaughter, petitioner fails to show the purported error was prejudicial.

28

1  In sum, petitioner has not demonstrated his trial counsel was ineffective in failing to request a
2  lesser-included offense instruction on attempted voluntary or involuntary manslaughter or
3  that appellate counsel was ineffective in failing to so argue.

4        Accordingly, petitioner is not entitled to habeas relief on this claim.

5             iii.     <u>Failure to Properly Cross-Examine Prosecution Witnesses</u>

6        Petitioner claims appellate counsel should have claimed trial counsel was ineffective
7  in failing to "impeach and properly cross-examine the prosecution witnesses regarding the
8  statement[s] attributed to petitioner and the circumstances of those statements."  (Pet. at 68.)
9  Petitioner presents no argument in support of this claim.  Specifically, petitioner fails to
10  identify any shortcoming in counsel's cross-examination of any prosecution witness.  <u>See</u>
11  <u>United States v. Schaflander</u>, 743 F.2d 714, 721 (9th Cir. 1984) (holding petitioner must
12  make sufficient factual showing to substantiate ineffective assistance of counsel claim).
13  Further, there is nothing in the record to show any prosecution witness fabricated testimony.

14        In sum, petitioner has not demonstrated his trial counsel was ineffective in his cross-
15  examination or that appellate counsel was ineffective in failing to so argue.

16        Accordingly, petitioner is not entitled to habeas relief on this claim.

17             iv.     <u>Failure to Investigate and Call Witnesses</u>

18        Petitioner claims appellate counsel should have claimed trial counsel was ineffective
19  in failing to "investigate and call witnesses that would have significantly contradicted the
20  prosecution witnesses regarding the fabrication of their hearsay testimony."  (Pet. at 68.)
21  To succeed on a claim that counsel was ineffective in failing to call a favorable witness, a
22  federal habeas petitioner must identify the witness, provide the testimony the witness would
23  have given, show the witness was likely to have been available to testify and would have
24  given the proffered favorable testimony, and demonstrate a reasonable probability that, had
25  such testimony been introduced, the jury would have reached a verdict more favorable to the
26  petitioner.  <u>See</u> <u>Alcala v. Woodford</u>, 334 F.3d 862, 872-73 (9th Cir. 2003).  A petitioner's
27  mere speculation that the witness would have given helpful information if interviewed by
28  counsel and called to the stand is not enough to establish ineffective assistance.  <u>See</u> <u>Bragg v.</u>

1    Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

2         In Dows v. Wood, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit denied a

3    petitioner's claim that his counsel had been ineffective in failing to investigate and call a

4    witness, where the petitioner only provided his own "self-serving affidavit" and no other

5    evidence, such as "an affidavit from [the] alleged witness," that the witness would have given

6    helpful testimony.  Id. at 486-87; cf. Alcala, 334 F.3d at 872 & n.3 (distinguishing, inter alia,

7    Dows; finding ineffective assistance of counsel where petitioner submitted interviews

8    reflecting testimony missing witnesses would have provided).

9         In support of this claim, petitioner provides two notarized letters, both written and

10   signed in 2007.  (Pet. Exs. K-L.)  Although respondent fails to address said letters, the Court

11   nonetheless finds the letters unavailing.

12        The first letter is written by Trinidad Tinoco ("Tinoco").  (Pet. Ex. K.)  Therein,

13   Tinoco claims the two rifles taken from the residence belonged to Tinoco and the handgun

14   taken from the residence belonged to the victim, not to petitioner.[11] (Id.)  According to the

15   letter, Doe told Tinoco she had obtained the handgun for protection.  (Id.)  Tinoco also

16   claims he bought bullets for the victim at her request.  (Id.)  Tinoco goes on to claim that a

17   detective and the prosecutor came to his home and "pressured" him to testify that the

18   handgun and bullets belonged to petitioner.  (Id.)  Tinoco states he testified at petitioner's

19   trial that the handgun and bullets belonged to petitioner because this was his "first time in

20   court" and he was "nervouse [sic] and scarred [sic]."  (Id.)

21        While the letter does establish Tinoco was available to testify at petitioner's trial, it

22   fails to show he would have given the proffered favorable testimony, i.e., that the handgun

23   and bullets belonged to the victim.  Indeed, the record shows Tinoco did testify and did so for

24   the prosecution.  (RT 378-92.)  Specifically, Tinoco testified that he first saw the handgun on

25   the kitchen table one day when he arrived home from work, that petitioner already had

26   bullets for the handgun, and that Tinoco, at petitioner's request, bought "magazines" to fit the

27   ─────────────────────

28        [11] Petitioner and Doe were living at Tinoco's residence at the time of the assault.
     (RT380-82.)

1   bullets.  (RT 382-87.)  Although Tinoco states the testimony he gave was perjured, any

2   argument that Tinoco "would have" provided more favorable testimony is belied by the

3   unfavorable testimony he in fact gave.  Nor does petitioner show Tinoco's purported

4   "favorable" testimony would have changed the verdict.  Specifically, even had the jury heard

5   evidence that the handgun and ammunition belonged to Doe, this would not preclude a

6   finding that petitioner used the weapon against her during the assault.

7       The second letter petitioner offers was written by Shawn Rai ("Rai"), who states he is

8   Doe's cousin.  (Pet. Ex. L.)  Therein, Rai claims petitioner was with him during the time the

9   assault is said to have occurred.  (Id.)  Rai also claims therein that Doe suffered from

10  "depression and schizophrenia" and that she was "emotionally unstable."  (Id.)

11      Rai's letter likewise is unavailing.  While Rai does state therein that he "spoke to

12  petitioner's lawyers before the trial had started with this information" and that he was never

13  contacted, Rai nowhere states he was available to testify at trial and would have given the

14  proffered testimony.[12]  Moreover, petitioner again fails to show that any "favorable"

15  testimony offered in the letter was likely to have changed the verdict.  While Rai states he

16  was with petitioner at the time the assault is said to have occurred, he provides no dates for

17  the time they purportedly spent together other than to say that he picked petitioner up from

18  his home on a Thursday afternoon and returned petitioner to his home at approximately

19  6:00 a.m. the next morning.  (Pet. Ex. L.)  Even had the jury accepted this alibi, Rai only

20  accounts for a segment of an attack that the prosecution showed took place over the course of

21  two days.  Indeed, as noted above, petitioner, in the pretext call, did not deny the acts on

22  which the charges were based.  Further, given such lack of denial, Rai's statement that Doe

23  had mental problems, for which no support is provided, is similarly unavailing.

24      In sum, petitioner fails to show defense counsel's decision not to call Tinoco and Rai

25  constituted deficient performance, and further fails to demonstrate he was prejudiced thereby.

26  Consequently, petitioner fails to establish appellate counsel was ineffective in failing to so

27

28          [12] The Court also notes that neither letter is written under penalty of perjury.

29

argue.  Petitioner also fails to establish appellate counsel had any reason to know of said two witnesses' assertedly potential testimony, or of trial counsel's purported failure to investigate either such witness.

Accordingly, petitioner is not entitled to habeas relief on this claim.

v.    Failure to Present Expert Testimony

Petitioner claims appellate counsel should have claimed trial counsel was ineffective in failing to "investigate and present expert testimony regarding anthropological, linguistic and sociological factors that would have significantly contradicted the prosecution's theory of the case."  (Pet. at 68.)

As with the petitioner in Dows, petitioner here offers no evidence showing any proposed experts would have provided favorable testimony.  He provides no affidavit from any such experts, nor any other evidence showing the testimony they would have given.  See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice").  Nor does petitioner provide any evidence demonstrating any such expert witness was available to testify at trial.

In sum, petitioner has not demonstrated his trial counsel was ineffective by reason of any failure to retain experts or that appellate counsel was ineffective in failing to so argue.

Accordingly, petitioner is not entitled to habeas relief on this claim.

vi.    Failure to Give Effective Closing Argument

Petitioner claims appellate counsel should have claimed trial counsel was ineffective in failing to "present an effective closing argument."  (Pet. at 68.)  Again, petitioner offers no support for his claim, and a review of the record shows counsel gave a thorough closing argument.  Petitioner fails to identify what further argument counsel should have made or how any such argument would have changed the verdict.  See Schaflander, 743 F.2d at 721 (holding petitioner must make sufficient factual showing to substantiate ineffective assistance of counsel claim).

In sum, petitioner has not demonstrated his trial counsel was ineffective in his closing argument or that appellate counsel was ineffective in failing to so argue.

1    Accordingly, petitioner is not entitled to habeas relief on this claim.

2                    vii.    Failure to Move to Suppress Impeaching Prior Convictions

3    Petitioner asserts trial counsel advised him not to testify because petitioner would be

4    impeached with his prior convictions.  (Pet. at 81.)  Petitioner claims appellate counsel

5    should have claimed trial counsel was ineffective in failing to move to suppress petitioner's

6    prior convictions before advising petitioner not to testify.  (Pet. at 80-81.)  In that regard,

7    petitioner points to two prior convictions: the 1992 conviction for battery with serious bodily

8    injury and the 2003 conviction for domestic violence, both discussed above.  (Id.)

9    There was no reason for trial counsel to move to suppress those convictions as the

10   record shows the issue was brought before the trial judge by other means and fully litigated.

11   Specifically, the prosecution moved in limine to admit, for impeachment purposes,

12   petitioner's 1992 and 2003 convictions (CT 279-84) and defense counsel filed an opposition

13   (CT 291-92).  Following a hearing, the trial court granted the prosecution's request to

14   impeach with the 2003 conviction, noting it had already been admitted as propensity

15   evidence.  (RT 19-20.)  The trial court denied the prosecution's request to impeach with the

16   1992 battery conviction.  (RT 20-23.)

17   Again, petitioner fails to satisfy either prong of the Strickland test.  First, petitioner

18   cannot establish ineffectiveness based on a failure to bring a motion to suppress, given that

19   the issue was argued by defense counsel and a ruling obtained thereon. Nor has petitioner

20   shown he was prejudiced, as he does not show how a motion brought by the defense would

21   have yielded a different outcome.[13]

22   In sum, petitioner has not demonstrated his trial counsel was ineffective in failing to

23   bring a motion to suppress or that appellate counsel was ineffective in failing to so argue.

24   Accordingly, petitioner is not entitled to habeas relief on this claim.

25                    viii.   Failure to Inform of Plea Offer

26   Petitioner claims appellate counsel should have claimed trial counsel was ineffective

27   
28        [13] Petitioner does not challenge the trial court's ruling on the issue, only counsel's
     failure to raise the issue.

because he failed to inform petitioner of a four-year plea offer made by the prosecution.  (Pet.

at 98.)  Respondent argues there is no record to support this claim.  A review of the record

shows the following colloquy took place at petitioner's sentencing hearing:

> [Defense Counsel]:[14] Well, I'd ask you to fashion a way to give him the lowest sentence possible under these array of charges. . . .  I mean this is a case where, as I understand, pretrial the offer was something like four years, and he took it to trial and exercised his right to go to trial.  And now he faces, you know, decades.

> [Prosecutor]: And let me just correct the record with regard to that.  The pretrial offer from the court was actually ten years.  Prior to or during the middle of pretrial motions in front of the judge when the victim -- when it was clear to me most likely that the victim was going to refuse to testify and at least half my evidence if not more was not going to come into evidence, which is what happened, that is when I suggested a possible offer of four years.  That was never actually ratified by the court or any judge because the defendant refused.

(RT 993-94 (emphasis added).)

> Additionally, petitioner includes the following in his verified petition:

> [P]etitioner states that he would have taken the four years had he only known about it. . . .  His trial counsel did not advise him of the offer, took the case to trial and lost.

(Pet. at 99.)

A defense counsel's failure to communicate to the defendant a formal plea offer from

the prosecution regarding a plea with favorable terms and conditions, such as a lesser

sentence or a conviction on lesser charges, or both, and allowing that offer to lapse,

constitutes deficient performance.  Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012).  To show

prejudice from ineffective assistance of counsel "where a plea offer has lapsed or been

rejected because of counsel's deficient performance, [a petitioner] must demonstrate a

reasonable probability" that (1) he "would have accepted the earlier plea offer"; and (2) "the

plea would have been entered without the prosecution canceling it or the trial court refusing

to accept it, if they had the authority to exercise that discretion under state law."  Frye, 132 S.

Ct. at 1409.  In other words, "it is necessary to show a reasonable probability that the end

result of the criminal process would have been more favorable by reason of a plea to a lesser

---

[14] Prior to the date of sentencing, new defense counsel was substituted.

charge or a sentence of less prison time."  Id.

The Court finds the record insufficient to support petitioner's claim.  First, there is no evidence that a firm four-year plea offer was ever made.  Rather, the transcript refers only to a "possible" offer of four years.  (RT 994.)  Further, while petitioner states he would have accepted a four-year offer, he fails to demonstrate a reasonable probability that such plea would have been accepted by the trial court.  "This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it."  Frye, 132 S. Ct. at 1410 (citations omitted); see also Cal. Penal Code § 1192.4.  Finally, petitioner fails to establish appellate counsel had reason to know of trial counsel's purported failure to advise petitioner of any such plea offer.  See Schaflander, 743 F.2d at 721 (holding petitioner must make sufficient factual showing to substantiate ineffective assistance of counsel claim).

Accordingly, petitioner is not entitled to habeas relief on this claim.

> b.  Failure to Raise Claims of Ineffective Assistance of Counsel at Sentencing Phase

As noted, petitioner was represented by new counsel at the sentencing (hereinafter, "sentencing counsel").  (CT 576; RT 958.)  Petitioner claims appellate counsel was ineffective in failing to argue petitioner's sentencing counsel was ineffective.  Petitioner claims his sentencing counsel provided ineffective assistance by failing: (1) to make a "proper" Romero motion; (2) to move to strike the prior conviction for lack of proper advisements; and (3) to move to strike the prior conviction for lack of evidence that such prior was a "serious felony."

> i.  Failure to Make "Proper" Romero Motion

In People v. Superior Court (Romero), 13 Cal. 4th 497, 508 (1996), the California Supreme Court interpreted the language of California Penal Code section 1385(a) and held a trial court may, on its own motion or motion of a party, strike one or more prior felony conviction allegations in a case brought under the Three Strikes Law.  Petitioner claims appellate counsel should have claimed sentencing counsel was ineffective because he did not

33

"properly present" all the factors weighing in favor of striking petitioner's 1992 conviction for battery with infliction of serious bodily injury.  (Pet. at 69-71.)  A review of the record shows counsel, at the sentencing hearing, made an oral motion to strike said prior conviction.  (RT 982.)  In that motion, counsel emphasized petitioner's "severe neuropsychological deficits" as documented in a psychological assessment submitted to the trial court.  (Id.; Resp. Ex. B at 9-22.)  Counsel also highlighted petitioner's participation in an in-custody domestic violence prevention program.  (RT 984.)

Petitioner identifies the following additional points he asserts counsel should have advanced: (1) none of the witnesses at the court trial on the prior conviction could identify him as the assailant; (2) there were no medical records presented at said court trial showing the victim had suffered great bodily injury; (3) the prior conviction was remote in time; (4) petitioner had family support; and (5) petitioner suffered from drug addiction.  (Pet. at 70.)

The first and second of the above-referenced arguments are essentially based on a claim the Court has addressed above and found unavailing.  Specifically, as discussed, there was ample evidence introduced at the trial to support the trial court's finding, beyond a reasonable doubt, that petitioner was the individual convicted in 1992 and that petitioner had inflicted "great bodily injury." (RT 951).  Under such circumstances, defense counsel could have made a reasonable tactical decision not to reargue the sufficiency of the evidence on which the sentencing judge already had made a finding beyond a reasonable doubt.

An argument that the prior conviction was "remote in time" likewise could have been counterproductive.  Although, as petitioner notes, approximately 13 years had elapsed between the 1992 conviction and the 2005 assault, petitioner had not led a crime-free existence in the interim.  The record shows petitioner had sustained convictions for misdemeanor possession of marijuana in 1995, misdemeanor driving under the influence in 2000, misdemeanor infliction of corporal injury on a cohabitant in 2003, followed by a probation violation and revocation.  (CT 617-19.)  Petitioner also had outstanding warrants in Sacramento for criminal threats and battery on emergency personnel in early 2005.  (CT 619, 622.)  Under such circumstances, an argument characterizing the strike prior as "remote"

1    may well have engendered a lengthy response cataloging petitioner's record as a whole.

2          Finally, there is no support in the record for the last two arguments petitioner asserts

3    should have been made.  There is nothing in the record suggesting petitioner in fact had the

4    "support of his family" other than petitioner's terse, conclusory statement to that effect.  (See

5    Pet. at 70:21.)  Further, petitioner specifically denied any drug use to his probation officer, as

6    reflected in the probation report prepared for the sentencing.  (See CT 614, 616.)  Given such

7    denial, defense counsel's decision not to emphasize drug use can hardly be deemed

8    unreasonable.

9          In sum, petitioner has not demonstrated sentencing counsel was ineffective in his

10   presentation of the Romero motion or that appellate counsel was ineffective in failing to so

11   argue.

12         Accordingly, petitioner is not entitled to habeas relief on this claim.

13                         ii.    Failure to Move to Strike for Lack of Proper Advisements

14         Petitioner claims appellate counsel should have claimed counsel at sentencing was

15   ineffective because he did not move to strike the 1992 felony battery conviction on the

16   ground that petitioner did not knowingly and voluntarily waive his rights when he pled guilty

17   to that charge.  (Pet. at 82-89.)  In that regard, petitioner claims the "record from San Mateo

18   County indicates" that at the time of his guilty plea, he was not advised of and did not waive

19   his rights against self-incrimination and to confrontation.  (Pet. at 83.)  Petitioner further

20   claims he "does not recall being advised" and that the record is "silent" as to the maximum

21   sentence he faced in the instant case.  (Pet. at 90.)

22         The only other support for said claim is an unsigned declaration in which petitioner

23   states in conclusory fashion that his constitutional rights were not "explained" to him.  (Pet.

24   Ex. J.)  Petitioner provides no evidence of the circumstances of his 1992 plea.  Petitioner

25   provides no transcript of the 1992 plea hearing, nor is there anything else in the record to

26

27

28

1   support petitioner's claim.[15]  Without evidence to show his 1992 plea was not knowingly and

2   voluntarily made, petitioner fails to demonstrate trial counsel's performance was deficient or

3   that appellate counsel acted unreasonably in failing to pursue such issue.  See Schaflander,

4   743 F.2d at 721 (holding petitioner must make sufficient factual showing to substantiate

5   ineffective assistance of counsel claim).  Nor does petitioner make any showing that

6   appellate counsel had reason to know of the purported lack of advisements.  See id.

7          Further, to the extent petitioner claims he was not advised of the maximum possible

8   consequences of his plea under California's Three Strikes Law, his claim is unavailing for

9   the additional reason that those amendments were not added until two years after petitioner

10   entered his plea.  See Cal. Penal Code § 667(b)-(i); People v. Green, 36 Cal. App. 4th 280,

11   282-83 (1995).[16]  Moreover, "[t]he possibility that the defendant will be convicted of another

12   offense in the future and will receive an enhanced sentence based on an instant conviction is

13   not a direct consequence of a guilty plea" and thus a defendant need not be advised thereof.

14   United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990).

15          In sum, petitioner has not demonstrated his counsel at sentencing was ineffective in

16   failing to pursue a motion to strike petitioner's 1992 conviction for lack of proper

17   advisements or that appellate counsel was ineffective in failing to so argue.

18          Accordingly, petitioner is not entitled to habeas relief on this claim.

19                        iii.    Failure to Move to Strike for Lack of Evidence that Prior Was
20                                "Serious Felony"

21          Petitioner claims appellate counsel should have claimed sentencing counsel was

22   ineffective because he did not move to strike the 1992 battery conviction on the ground that

23   the evidence was insufficient to support the trial court's finding that petitioner's 1992

24   conviction was a "serious felony" as required to constitute a strike prior under California's

25

26          [15] Although petitioner claims the transcript of the 1992 plea proceeding is no longer
     available (see Pet. at 91), he offers no evidence to show the Clerk's record no longer exists,
27   or even that he made any effort to obtain a copy.

28          [16] Under California law, a sentence can properly be enhanced under the Three Strikes
     law by a serious felony conviction that occurred prior to its enactment.  See id.

1   Three Strikes Law.  (Pet. at 95-98.)

2         As noted, under the Three Strikes Law, a prior conviction is a "serious felony" that

3   counts as a strike for sentence enhancement purposes if it is a crime listed in subdivision (c)

4   of Penal Code section 1192.7.  See Cal. Penal Code § 667(d)(1).  Although, as petitioner

5   points out, battery with serious bodily injury is not one of the crimes specifically listed in

6   section 1192.7 as a "serious felony," see Cal. Penal Code § 1192.7(c), it can, upon a proper

7   evidentiary showing, qualify as such under subsection (c)(8), which includes "any felony in

8   which the defendant personally inflicts great bodily injury on any person, other than an

9   accomplice."  See Cal. Penal Code § 1192.7(c)(8); see also People v. Bueno, 143 Cal. App.

10  4th 1503, 1508 (2006) (holding prior § 243(d) conviction qualifies as "serious felony" under

11  § 1192.7(c)(8) if defendant admits or prosecution proves defendant "*personally* inflicted the

12  injury, rather than that he aided and abetted another, and that the victim was not an

13  accomplice"; assuming without finding "serious bodily injury" is legal equivalent of "great

14  bodily injury") (citation omitted; emphasis in original).

15        Petitioner argues the evidence was insufficient to support the "serious felony" finding

16  because (1) none of the witnesses at the court trial on the prior conviction could identify

17  petitioner as the assailant; and (2) there were no medical records presented at the court trial

18  on the prior conviction showing the victim thereof had suffered great bodily injury.  As

19  noted, the Court has addressed the referenced arguments above and found them unpersuasive.

20  In particular, at the trial on the prior conviction, the prosecution called the following

21  witnesses: the victim of the battery, a witness to the battery, the arresting officer, and an

22  investigator.  (RT 911, 920, 925, 942.)  The victim testified that his assailant, without

23  provocation, hit him in the jaw, breaking it in multiple locations (RT 914-15); the victim had

24  his jaw wired shut for ten weeks (RT 915, 919).  The prosecution further established

25  petitioner was the individual who suffered the 1992 conviction.  (RT 942.)  Petitioner offered

26  no evidence and did not seriously challenge his identity as the individual so convicted.  (See

27  RT 916-19, 924-25, 935-37, 941-43, 946, 951.)  As discussed above, this evidence was more

28  than adequate to support the trial court's finding that petitioner had committed a "serious

1  felony" as defined under Penal Code section 1192.7(c)(8).

2       In sum, petitioner has not demonstrated his sentencing counsel was ineffective in

3  failing to pursue a motion to strike on grounds of insufficient evidence or that appellate

4  counsel was ineffective in failing to so argue.

5       Accordingly, petitioner is not entitled to habeas relief on this claim.

6            c.    Failure to Challenge Trial Court's Denial of Motion for New Trial

7       Petitioner claims appellate counsel was ineffective in failing to challenge the trial

8  court's denial of his motion for a new trial based on "new" evidence.  (Pet. at 71-77.)

9                 i.    Background

10      After trial, petitioner moved for a new trial pursuant to California Penal Code section

11 1181(8), which provides that a trial court may grant a new trial, where, inter alia, "new

12 evidence is discovered material to the defendant, and which he could not, with reasonable

13 diligence, have discovered and produced at the trial."  Cal. Penal Code § 1181(8); (See CT

14 599-605; RT 958.)  The basis for petitioner's motion was a declaration from the victim, filed

15 in support of said motion, in which the victim recanted her statements to the police, denied

16 the offenses, and accused various prosecution witnesses of lying.  (See CT 599-600.)

17      After hearing argument by both parties, the trial court denied the motion.  (RT 961-

18 81.)  The court found a new trial would not have resulted in a different verdict.  The trial

19 court explained that both of the parties as well as the court had attempted to persuade the

20 victim to testify, but that the victim continued to refuse, despite an order holding her in

21 contempt and despite the prosecution's having granted her immunity.  Based on such record,

22 the court found there was no greater likelihood the victim would testify at a new trial.  (RT

23 962-64, 967-69, 975, 979, 981.)  Additionally, the court explained, the jury was already

24 aware of the victim's recantation, as she had recanted her statements earlier in letters written

25 before trial and those letters had been admitted in evidence at the trial.  (RT 964-66, 971,

26 976-77, 981.)  The court also found the victim's declaration and recantation therein were not

27 credible.  (RT 968, 977.)  Lastly, the court found the proffered evidence was not "new" (RT

28 981), noting that the victim had previously recanted and evidence thereof was already before

38

1   the jury.  (Id.)

2                    ii.     Analysis

3          Under California law, "The determination of a motion for a new trial rests so

4   completely within the court's discretion that its action will not be disturbed unless a manifest

5   and unmistakable abuse of discretion clearly appears."  People v. Delgado, 5 Cal. 4th 312,

6   328 (1993) (internal quotations and citations omitted).  "In ruling on a motion for new trial

7   based on newly discovered evidence, the trial court considers the following factors: 1. That

8   the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not

9   cumulative merely; 3. That it be such as to render a different result probable on a retrial of

10  the cause; 4. That the party could not with reasonable diligence have discovered and

11  produced it at the trial; and 5. That these facts be shown by the best evidence of which the

12  case admits."  Id. (internal quotations and citations omitted).

13         In claiming appellate counsel was deficient in not raising an issue with respect to the

14  denial of a new trial, petitioner fails to satisfy either prong of the Strickland test.  See

15  Strickland, 466 U.S. at 687-88.  The trial court's determination that Doe's recantation was

16  not "new" was supported by the fact that she already had recanted before trial, a fact of

17  which the jury was well aware.  Given those circumstances, the proffered evidence was not

18  "newly discovered," but rather, was "cumulative" of that already presented and, for that

19  reason, could have been "discovered and produced [] at the trial" and would not have

20  "render[ed] a different result probable on retrial."  See Delgado, 5 Cal. 4th at 328.  In other

21  words, the trial court had reasonable grounds to find at least four of the five Delgado factors

22  weighed against the granting of a new trial.

23         Petitioner fails to show how appellate counsel could have overcome the trial court's

24  findings and persuaded the appellate court to reverse his conviction.  Consequently,

25  petitioner fails to show he was prejudiced by any failure on the part of appellate counsel to

26  raise a claim based on the denial of a new trial.

27         Accordingly, petitioner is not entitled to habeas relief on this claim.

28

1         d.      Failure to Challenge Trial Court's Denial of Romero Motion

2        Petitioner claims appellate counsel was ineffective in failing to challenge the trial

3 court's denial of his <u>Romero</u> motion.  (Pet. at 77-80.)  As discussed above, petitioner's

4 counsel, at the sentencing hearing, made an oral motion to strike petitioner's 1992 felony

5 conviction for battery with infliction of serious bodily injury (RT 982), and the trial court

6 denied the motion (RT 983-84).  In support of its decision, the trial court noted the violent

7 nature of both the current offense and prior strike offense.  (<u>Id.</u>)

8        Under California law, "a trial court's refusal or failure to dismiss or strike a prior

9 conviction allegation [] is subject to review for abuse of discretion."  <u>People v. Carmony</u>, 33

10 Cal. 4th 367, 375 (2004).  "[A] trial court does not abuse its discretion unless its decision is

11 so irrational or arbitrary that no reasonable person could agree with it."  <u>Id.</u> at 377.  Nothing

12 in the record shows an "irrational or arbitrary" decision by the trial court, and petitioner fails

13 to make any other showing suggesting a claim asserting <u>Romero</u> error was likely to have

14 succeeded on appeal.

15        Accordingly, petitioner is not entitled to habeas relief on this claim.

16         e.      Failure to Claim Prior Conviction Should Have Been Tried to Jury

17        Petitioner claims appellate counsel was ineffective in failing to claim sentencing error

18 on the ground that petitioner's sentence was imposed based on a factual determination not

19 made by the jury, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (Pet. at 100.)

20 Petitioner's claim is based on the trial court's finding that petitioner was convicted of the

21 1992 battery discussed above.  (<u>Id.</u>)

22        In <u>Cunningham v. California</u>, 549 U.S. 270, 288-89 (2007), the Supreme Court held

23 California's determinate sentencing law, which authorized a judge, rather than a jury, to find

24 facts exposing a defendant to an enhanced sentence, violated a defendant's right to trial by

25 jury.  In so concluding, the Supreme Court relied on its previous decision in <u>Apprendi</u>.  <u>Id.</u>

26 In <u>Apprendi</u>, the Court had held "[o]ther than the fact of a prior conviction, any fact that

27 increases the penalty for a crime beyond the prescribed statutory maximum must be

28 submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  In short, the

Supreme Court has explicitly carved out an exception for prior convictions; specifically, a sentencing court may consider prior convictions for purposes of enhancing a sentence without having to submit them to a jury.  See Kessee v. Mendoza-Powers, 574 F.3d 675, 676-77 (9th Cir. 2009).[17]  Further, as discussed above, petitioner waived jury trial on the prior conviction allegation.  Consequently, any claim that the prior conviction allegation should have been tried to a jury would have failed on appeal.

Accordingly, petitioner is not entitled to habeas relief on this claim.

f.      Failure to Claim Insufficient Evidence to Support Firearm Enhancement

Petitioner claims appellate counsel was ineffective in failing to claim there was insufficient evidence to support the enhancement that petitioner used a firearm in the commission of the offense.  (Pet. at 101.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Consequently, where a state prisoner alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, such petitioner states a constitutional claim, Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, id. at 324.  For purposes of determining such a claim, the relevant inquiry is whether, "after viewing the evidence in the light most favorable

---

[17] In a supplemental letter brief on this claim (Dkt. No. 23), petitioner relies on Wilson v. Knowles, 638 F.3d 1213 (9th Cir. 2011).  In Wilson the Ninth Circuit held the Apprendi exception allowing a trial court to decide the fact of a prior conviction in determining the proper sentence did not apply where the trial court found disputed facts at issue, "such as the extent of the victim's injuries and how the accident occurred."  Wilson, 638 F.3d at 1215.  Assuming Wilson has a limiting effect on the extent of a trial court's findings in connection with prior convictions, it cannot be said that appellate counsel's decision not to pursue such claim fell below an "objective standard of reasonableness," given that: (1) Wilson was decided subsequent to petitioner's direct appeal and was decided by a divided court; and (2) petitioner waived jury trial on the prior conviction allegation.  See Strickland, 466 U.S. at 688; see also In re Richardson, 196 Cal. App. 4th 647, 659 (2011) (stating California courts "are not bound by the Ninth Circuit's decision in Wilson.")

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Where the record supports conflicting inferences, a federal habeas court must presume the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. Id. at 326. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324.

Petitioner claims the evidence was insufficient to support the firearm enhancement because the evidence was "the product of perjured testimony by the victim but [sic] later admitted in the sworn declaration that the entire case was made by her false accusation." (Pet. at 101.) In other words, petitioner's claim is premised not on the evidence adduced at trial but rather on a declaration prepared after trial. Petitioner has pointed to no authority, nor is the Court aware of any, suggesting an insufficient evidence claim can be based on evidence not adduced at trial. Consequently, appellate counsel cannot be deemed ineffective for failing to bring an insufficiency of evidence claim as to the firearm enhancement.

Accordingly, petitioner is not entitled to habeas relief on this claim.

C.    Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward; [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

42

**IV.  CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.  The petition for a writ of habeas corpus is hereby DENIED.

2.  A certificate of appealability ("COA") is hereby DENIED.

3.  The Clerk shall enter judgment in favor of respondent and close the file.

4.  Additionally, the Clerk is directed to substitute Warden Rick Hill on the docket as the respondent in this action.

IT IS SO ORDERED.

DATED: June 1, 2012

_____
MAXINE M. CHESNEY
United States District Judge